IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:13CR3139 |
| vs. | |
| JOSE REYNALDO CHIRINOS-RODRIGUEZ, | MEMORANDUM AND ORDER |
| Defendant. | |

Citing 18 U.S.C. § 3006A(f), the government moves for an order directing the defendant to pay some or all of the costs of his representation. (Filing No. 36). Pursuant to this court's CJA Plan:

> If, at any time after appointment, counsel obtains information that a client is financially able to make payment, in whole or in part, for legal or other services in connection with his or her representation, and the source of the attorney's information is not protected as a privileged communication, counsel shall advise the court.

Criminal Justice Act Plan, (D.C. Neb. 2010).

The government claims the defendant has access to funds to pay for his representation. Specifically, the government states:

1) The defendant initially retained Jon Placke as counsel, and paid him a $2000 retainer;

2) Placke represented the defendant at only one hearing before the attorney-client relationship was terminated;

3) Placke must return the unearned portion of the $2000 retainer received from the defendant; and

4) The funds refunded to the defendant from Placke should be used to pay all or a portion of defendant's representation by appointed counsel.

(Filing No. 36).

The defendant has filed no opposition to the government's motion. Placke opposes the motion, claiming his retainer was nonrefundable and he owes the defendant nothing. Placke also claims this court lacks jurisdiction to consider the issue. (Filing No. 53).

For the reasons discussed below, the court finds it has jurisdiction to consider the government's motion, but on the evidence before the court, the government's motion will be denied.

SUBJECT MATTER JURISDICTION

A defendant facing felony charges has the right to counsel. The court must appoint counsel for a criminal defendant if the court is satisfied, after "appropriate inquiry" that the defendant is "financially unable to obtain counsel." The defendant bears the burden of proving he is "financially unable" to afford representation. U.S. v. Brockman, 183 F.3d 891, 897 (8th Cir. 1999)

When deciding whether a defendant can afford counsel, the scope of the court's inquiry is broad. The court may consider amounts owed to the defendant, and payments received by the defendant from others. Tavery v. U.S., 32 F.3d 1423, 1429 (10th Cir. 1994). "Financial inability includes an inquiry into whether there is available to the defendant funds for his defense from other sources such as family, friends, trusts, estates, or defense funds." Id. (quoting United States v. Martinez–Torres, 556 F.Supp. 1275, 1279 (S.D.N.Y. 1983)). See also United States v. Barcelon, 833 F.2d 894, 897 n. 5 (10th Cir.1987).

Defendant Chirinos-Rodriguez is charged with a federal felony offense. Placke attended the defendant's initial hearing and entered his appearance as defendant's counsel. The court has jurisdiction over this case, and the inherent authority over counsel who appear in this forum. The court must assess whether defendant's financial assets include amounts owed to him by Placke and if so, whether Placke's refund of unearned fees must be applied toward the costs of defendant's representation. Federal statutory law governs that issue. See 18 U.S.C. § 3006A(f) ("Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney… ."). This court has jurisdiction over the case, and the issues raised by the government's motion. And it has jurisdiction over Placke, who entered his appearance as counsel for the defendant. Placke's argument to the contrary is denied.

## STATEMENT OF FACTS

The defendant was arrested on a federal warrant on November 22, 2013. The defendant speaks only Spanish: He cannot speak, read, or write English. (Filing No. 51, at CM/ECF p. 36:22-23; 37:11-13; 49:2-6). Defendant's friend, Zenia Ramirez, speaks both Spanish and English and often assists the defendant as a translator. (Filing No. 51, at CM/ECF p. 48:13-17).

Following the defendant's arrest, Ramirez asked Placke for his help in retrieving Defendant's keys and wallet from the jail. Ramirez did not have a photo identification. Ramirez paid Placke $100 for his assistance. (Filing No. 51, at CM/ECF p. 32:24-33:3; 43:13-23).

The defendant's initial appearance was scheduled for November 26, 2013. On November 25, 2013, Ramirez advised Placke that the defendant wanted to retain Placke

as counsel. Placke agreed to represent the defendant during all stages of the case, including trial, sentencing, and any appeal, for the total amount of $7500. Since the defendant could not pay the full $7500 up front, Placke agreed to accept $2000, with payments on the balance to be made thereafter. (Filing No. 51, at CM/ECF p. 44:21-16).

Placke speaks English and only limited Spanish. Placke went to the jail and spoke to the defendant without an interpreter. (Filing No. 51, at CM/ECF p. 36:22-37:3). Placke states that during that conversation, he told the defendant that the defendant would be charged $7500 for legal representation by Placke, and that this fee payment was nonrefundable. Placke states the defendant agreed to pay a nonrefundable fee of $7500. (Filing No. 51, at CM/ECF p. 6:16-7:3; 7:17-8:10; 37:11-17).

Ramirez delivered $2000 in cash to Placke, and she received a handwritten receipt acknowledging that $2000 was paid and a $5500 balance was owed. (Filing No. 51, at CM/ECF p. 30:10-14; 31:4-22). The receipt does not indicate that the $2000 was nonrefundable, (Ex. 2), and Placke never mentioned that term when speaking with Ramirez. (Filing No. 51, at CM/ECF p. 46:15-22).

Although Placke has a written form for memorializing fee agreements, and his form agreement states the fee is nonrefundable, Placke did not provide that written agreement to the defendant (through Ramirez or any other interpreter) for the defendant's review and approval. No written fee agreement between the defendant and Placke exists. (Filing No. 51, at CM/ECF p. 33:10-17). Placke has an attorney trust account, but he did not deposit the $2000 cash retainer in that account, or any other bank account, after it was received. (Filing No. 51, at CM/ECF p. 7:9-16). So the handwritten receipt given to Ramirez is the only documentation of record that confirms Placke received money from the defendant.

On November 26, 2013, Placke drove to Lincoln, attended Defendant's initial appearance, and drove back to Grand Island. Ramirez rode with Placke to and from the hearing. The defendant had requested appointed counsel and completed a financial affidavit while at the Lincoln holding area, (Filing No. 12), and attorney Michael Hansen also attended the initial appearance.

On November 27, 2013, Ramirez contacted Placke's office and advised him that the defendant no longer wanted Placke as counsel, and the defendant wanted a refund for the unearned fees. (Filing No. 51, at CM/ECF p. 19:23-20:5; 47:5-16). Placke did not personally speak with Ramirez and he did not contact the defendant to follow up on Ramirez' notice. (Filing No. 51, at CM/ECF p. 20:19-21:5; 34:3-20). Having received no response to the November 27 notice, Ramirez met with the defendant on December 6, 2013. On the defendant's behalf, she wrote a letter stating the defendant was terminating Placke's representation and that the defendant expected the unearned fees to be refunded. Placke received the letter, but he did not respond. (Filing No. 51, at CM/ECF p. 50:11-22). In fact, Placke never spoke with or contacted the defendant as to any issue in the case, including the status of defendant's representation, after the initial appearance was held on November 26, 2013. (Filing No. 51, at CM/ECF p. 21:10-13; 34:3-12).

As of the time of the initial appearance, and dating back to at least 2005, Placke had not paid the Nebraska federal court's biennial assessment for bar membership.[1] Although very experienced at representing criminal defendants in state court, Placke had represented only four criminal defendants in federal court, and only one defendant for an entire case. (Filing No. 51, at CM/ECF p. 25:25-29:11). Based on the review of this court's docket filings, as of February 2014, Placke had not filed anything on behalf of any federal defendant for over five years.

---

[1] Placke paid the annual assessment after the hearing on November 26, 2013 at my Courtroom Deputy's request.

Two hearings were held on the pending motion. On January 30, 2014, the court entered an order setting the first hearing for February 3, 2014. ([Filing No. 37](#)). The court's order clearly stated that the hearing would be held on February 3, 2014 at 2:00 p.m. in Courtroom 2 of the federal court in Lincoln, Nebraska. Placke failed to appear for the hearing. Instead, he called my chambers during the hearing and stated he thought the hearing was being held telephonically. Placke was permitted to join the hearing, already in progress, by telephone. After considering both Ramirez' testimony and Placke's position, the court explained that Placke's statement that the paid retainer was nonrefundable contradicted Ramirez' statements. So an issue of fact existed over the terms of the fee agreement. If Placke owed the defendant a refund, the court would need to decide the amount of any refund owed and whether that amount should be used to pay for the defendant's representation. An evidentiary hearing was reset for February 6, 2014. ([Filing No. 40](#)).

Following the telephonic hearing on February 3, 2014, Placke began constructing a timesheet for this case based on his memory and estimates of when he worked on the file, what he did, and how much time was spent on each item listed. ([Filing No. 51, at CM/ECF p. 12:13-13:21; 24:6-10](#)). Placke contacted local lawyers about their billing rates for federal criminal cases and based on those conversations, used a $250 per hour billing rate. ([Filing No. 51, at CM/ECF p. 14:3-23](#)). The timesheet (Exhibit 4) indicates Placke believes he invested $3,928.00 of attorney time and expenses into this case. The majority of Placke's time entries were made after November 27, 2013, the date Placke was advised by Ramirez that he was terminated as counsel for the defendant. Placke's time entries reflect charges for time spent speaking with Ramirez on November 27, 2013, but Placke testified that he never talked to Ramirez on that date. Placke's constructed timesheet also lists time spent to perform clerical matters such as "OPEN FILE," ([Filing

No. 51, at CM/ECF p. 15:22-16:8), and to prepare for and attend the hearing on the pending fee issue.

During his testimony on February 6, 2014, Placke stated he receives notices of electronic filings (NEFs) for his federal cases. Placke explained that upon receipt of an NEF, he opens the link to review any attached document, but he does not save a copy of those documents. Placke stated that until he was preparing for his testimony on February 6, 2014, he believed he could access all documents filed on PACER at any time. Placke acknowledged he did not have a username or password for PACER, and was not aware that he needed a PACER account to access a filing more than once. (Filing No. 51, at CM/ECF p. 40:4-41:8).

Placke's timesheet states he drafted a motion to withdraw on January 17, 2014. (Ex. 4). He never filed that written motion. The court granted Placke's oral motion to withdraw at the hearing on February 6, 2014. (Filing No. 51, at CM/ECF p. 4:20-5:16).

Based on the records from the Hall County Jail, (Ex. 5), Placke spoke to the defendant twice while at that facility: He met with the defendant for 45 minutes on November 22, 2013, and for an hour and five minutes on November 25, 2013. The Hall County Jail records, and Ramirez' testimony, are not consistent with the time sheets created by Placke over two months later.

Placke attended the defendant's initial appearance on November 26, 2013. Assuming an hour for meeting with pretrial services and attending the hearing itself, along with the time driving to and from Grand Island, parking his vehicle, and walking into the courthouse to attend the hearing, Placke spent no more than 4.5 hours representing the defendant on November 26, 2013. As to the November 27, 2013 time entries, Placke lists reviewing two orders appointing counsel for the defendant, but only

one order was entered. And Placke lists a conference with Ramirez, but he never spoke to Ramirez on November 27, 2013. The remaining entries for November 27, 2013 state he spent 0.2 hours (12 minutes) reviewing each of the following orders: the order appointing counsel, the court's progression order, and the order setting conditions for the defendant's release, for a total of 0.6 hours.

The hourly rate for CJA appointed counsel for the time period from November 2013 to February 2014 was $110 per hour. All such counsel must be qualified to zealously represent their clients, which includes knowing how to access the court's docket, file motions, briefs, and objections of the client's behalf, and manage and locate filings entered by the court, and by counsel for the government and any other party in a case.

## LEGAL ANALYSIS

When assessing the defendant's available assets to pay for appointed counsel, the court must decide: 1) Did the defendant enter into a nonrefundable fee agreement with Placke; 2) if not, what portion of the $2000 retainer paid to Placke must be returned as unearned fees; and 3) if the defendant is entitled to a refund for unearned fees, must the amount refunded be used to pay for the defendant's appointed counsel?

Courts should be reluctant to undermine or disturb fee arrangements freely entered into "by knowledgeable and competent parties." [Hauptman, O'Brien, Wolf & Lathrop, P.C. v. Turco, 273 Neb. 924, 933, 735 N.W.2d 368, 376 (2007)](Gerrard, J., concurring). But "the lawyer has the burden of proving the existence and terms of any fee contract, the making of any disclosures to the client required to render a contract enforceable." [Hauptman, O'Brien, 273 Neb. at 933, 735 N.W.2d at 375](Gerrard, J., concurring).

Based on the evidence before the court, Placke has failed to meet this burden. Placke speaks limited Spanish, and the defendant speaks no English. Yet Placke explained the fee arrangement to the defendant without an interpreter. The alleged nonrefundable fee agreement was never reduced to writing in either English or Spanish. So neither the defendant nor Ramirez was afforded the opportunity to read the agreement, and Ramirez could not read the agreement to the defendant aloud. While Placke claims he explained the terms of the agreement to Ramirez, she credibly denies that statement. More importantly, although Ramirez served as a conduit for paying the retainer, contacting Placke initially, and advising Placke that his representation was terminated, Placke represented the defendant, not Ramirez. Placke was required to clearly explain the terms of the plea agreement to the defendant himself, and in a language the defendant understood. Placke has failed to show that the defendant knew and understood the terms of the alleged nonrefundable fee agreement, and that he agreed to be bound by a term stating the retainer was nonrefundable.

Upon review of the credible evidence, at most, Placke is entitled to recover fees for the following services rendered:

| Date | Service | Hours |
|---|---|---|
| 11/22/2013 | Travel to/from the Hall County Jail and meeting with the defendant. | 1.0 |
| 11/25/2013 | Travel to/from the Hall County Jail and meeting with the defendant. | 1.4 |
| 11/26/2013 | Travel to/from federal court in Lincoln, Nebraska and appearing at the defendant's hearing. | 4.5 |
| 11/27/2013 | Review of court orders appointing counsel, setting a case progression schedule, and setting conditions for defendant's release. | 0.6 |
| | | 7.5 |

9

Placke is not entitled compensation for time invested after November 27, 2013, when he knew or should have known his representation was terminated.

Upon consideration of Placke's experience and understanding of the federal court's criminal docket, including its PACER system for management of cases and representation of clients in federal court, the court finds the hourly rate of $250.00 is excessive. Placke is entitled to no more than $110 per hour—the rate charged by CJA panel lawyers, all of whom must have criminal litigation experience and be able to use PACER before becoming approved panel attorneys.

Accordingly, for the seven and one-half hours of work Placke performed on this case, his reasonable compensation is, at most, $825. Placke is also entitled to be paid $102 for the mileage of travelling to and from Defendant's initial appearance in Lincoln, Nebraska. Thus, the total amount of fees earned and costs incurred by Placke is $927.

Placke received a total of $2100. He has therefore retained $1173 of unearned fees. The defendant is entitled to a refund in that amount.

However, Ramirez testified that the retainer money was collected as loans (not gifts or payments) from Defendant's friends. Considered in the context of defendant's financial affidavit, the court finds that even after Placke refunds $1173 to the defendant, the defendant will remain unable to afford counsel. The court will therefore deny the government's motion to require the defendant to use the refund received from Placke as payment toward the cost of his appointed counsel.

Accordingly,

IT IS ORDERED that the government's motion for an order directing the defendant to pay some or all of the costs of his representation, (Filing No. 36), is denied.

March 19, 2014.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.